## COMMONWEALTH *vs.* GEURI LUGO.

No. 03-P-1468.

Bristol. November 17, 2004. - July 18, 2005.

Present: BECK, GELINAS, & KAFKER, JJ.

*Controlled Substances. Search and Seizure,* Warrant, Motor vehicle. *Practice, Criminal,* Motion to suppress, Motion for reconsideration, Jury and jurors, Deliberation of jury. *Jury and Jurors.*

A Superior Court judge properly entertained the Commonwealth's motion for reconsideration of the criminal defendant's motion to suppress evidence, because Mass.R.Crim.P. 13(a)(5), which permits a judge to reconsider if substantial justice requires, is not limited to instances where there are allegations of new or additional grounds that could not have been reasonably known when the original motion was filed. [13-14]

A Superior Court judge properly denied the criminal defendant's motion to suppress evidence of drugs discovered in his vehicle, where the police officers executing a search warrant were well within their authority temporarily to remove the defendant's vehicle from in front of his apartment building to the police station to perform the search within a reasonable time after the vehicle was towed, and where nothing in the facts required the police to search the vehicle on the spot, as such a search would be no more private than the search actually conducted. [14-16]

At a criminal trial, the judge did not err in denying a request from the jury for permission to break outside the court house to smoke, where the judge had discretion to control the conduct of the trial, and where the defendant failed to demonstrate that the denial resulted in a compelled or compromised verdict. [17-18]

INDICTMENTS found and returned in the Superior Court Department on April 26, 2002.

A pretrial motion to suppress evidence was heard by *John P. Connor,* J., and a motion for reconsideration was also heard by him; the cases were tried before *Richard F. Connon,* J.

*Edward J. Abramson,* of Florida (*Anne W. Marsh* with him) for the defendant.

*Kevin E. Connelly,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Geuri Lugo, appeals from his convictions of trafficking in heroin in excess of 200 grams, trafficking in cocaine in excess of 200 grams, and two counts of a drug violation in a school zone.[1] On appeal, Lugo claims that the motion judge erred in denying his motion to suppress evidence of drugs discovered in one of his vehicles: he contends that the police exceeded the scope of their warrant when they towed two of his vehicles from in front of his residence and searched them at the police station. Search of the vehicles was authorized in the warrant. Lugo also claims that the trial judge erred in denying the jury an opportunity to take a cigarette break during deliberations, arguing that the refusal contributed to a quick, or compromised, verdict.

*Motion to suppress.* In February, 2000, Fall River police sought and obtained a warrant to search Lugo's apartment and three vehicles: a blue Honda Accord, a two-tone brown Ford Aerostar, and a white Plymouth Voyager. The warrant authorized a search for "[h]eroin, and any and all paraphernalia, instrumentalities related to the use, sales, manufacture and distribution of said controlled substance and any monies or records derived from the illegal sales thereof, and personal papers or items to show standing."

After the search of the apartment was concluded, Lugo was arrested and transported to the Fall River police station. The Honda Accord, which was operable, and the Ford Aerostar, determined to be inoperable, were towed there as well, prior to being searched. A search at the police station, conducted shortly after the vehicles' arrival, revealed contraband of the type described in the warrant, hidden in a compartment in the Ford Aerostar.

Lugo filed a motion to suppress, challenging the seizure of the Honda Accord and the Ford Aerostar and their subsequent search at the police station. He argued that the officers exceeded the scope of the search warrant by seizing the vehicles without first searching them or discovering any contraband, as contemplated by the warrant.

After a hearing, at which the Commonwealth presented no testimony or other evidence, the motion judge granted Lugo's

---

[1]An indictment charging the defendant with conspiracy to violate the drug laws was nol prossed.

motion. The Commonwealth subsequently moved for reconsideration, and at the rehearing, the Commonwealth presented facts and evidence that the motion judge had not previously heard. The motion judge then reversed himself and entered an order denying Lugo's motion to suppress.

Lugo first objects to the allowance of the Commonwealth's motion for reconsideration, contending that the motion failed to raise any issues that were not known at the time of the hearing on the original motion to suppress. He argues, citing to Mass.R. Crim.P. 13(a)(2), 378 Mass. 871 (1979), that "[g]rounds not stated which reasonably could have been known at the time a motion is filed shall be deemed . . . waived."

The motion judge properly entertained the Commonwealth's motion for reconsideration. Rule 13(a)(5) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 871 (1979), permits a judge to reconsider if "substantial justice requires." This rule is not limited to instances where there are allegations of new or additional grounds that could not have been reasonably known when the original motion was filed. *Commonwealth* v. *Haskell*, 438 Mass. 790, 792 (2003). "A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law, and the adoption of rule 13 was not intended to disturb this authority." *Ibid.*

Lugo next argues that in seizing the Honda Accord and the Ford Aerostar, officers exceeded the scope of the search warrant, as the seizure of the vehicles occurred without first searching them for contraband or related instrumentalities. As no contraband was discovered in the Honda Accord, we confine our decision to the seizure of the drugs from the Ford Aerostar.

The temporary removal of the Ford Aerostar to the police station to perform a search was within the authority of the police pursuant to the search warrant, and the motion judge properly denied Lugo's motion to suppress the drugs found therein. On review, we accept the motion judge's subsidiary findings of fact (absent clear error), granting "substantial deference to the [motion] judge's ultimate conclusions." *Commonwealth* v. *Jones*, 439 Mass. 249, 254 (2003), quoting from *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 364 (1997). However, we indepen-

dently review application of constitutional principles to the facts found. *Id.* at 255.[2]

Lugo had no right to require that the police search his automobiles, the object of a valid search warrant, in front of his apartment rather than at the police station. The right protected by the prohibition against unreasonable searches and seizures is a privacy right, not a proprietary one. See *Warden, Md. Penitentiary* v. *Hayden,* 387 U.S. 294, 304 (1967); *Rawlings* v. *Kentucky,* 448 U.S. 98, 105-106 (1980). Privacy is disturbed no more by a search of the Aerostar at the police station than by a search at the apartment building. See *United States* v. *Santarelli,* 778 F.2d 609, 616 (11th Cir. 1985). Temporary removal does not violate the rule against unreasonable searches and seizures because the purpose of the rule has been achieved: a warrant was issued to notify the person subject to the search that officers have been authorized to be in a particular place searching for a particular thing. See *Commonwealth* v. *Gauthier,* 425 Mass. 37, 43 (1997).

Courts have explicitly allowed police to search a vehicle at the police station, rather than where it is first stopped or found, in cases of warrantless searches. In cases where the police have probable cause to stop a car, "[t]he inherent mobility of an automobile is the exigent circumstance that justifies a warrantless search at the time of a vehicular stop." *Commonwealth* v. *Agosto,* 428 Mass. 31, 34 (1998). "Once a warrantless search is justified, there is no inhibition against deferring the search and conducting it at the station." *Commonwealth* v. *Barnes,* 2 Mass.

---

[2] We note that in *Commonwealth* v. *Scott,* 440 Mass. 642 (2004), the standard of review is formulated thus: "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Id.* at 646, quoting from *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). See *Commonwealth* v. *Cruz,* 373 Mass. 676, 682 n.2 (1977), quoting from *Commonwealth* v. *Mahnke,* 368 Mass. 662, 666-667 (1975), cert. denied, 425 U.S. 959 (1976) ("In reviewing the record on this issue '[w]e accept, as we must, the trial judge's resolution of conflicting testimony . . . , and will not disturb his subsidiary findings if they are warranted by the evidence . . . . However, ultimate findings and conclusions of law, particularly those of constitutional dimensions, are open for our independent review in this appeal' "). To the extent that this line of cases presents a standard different from that of *Commonwealth* v. *Jones, supra,* the result here would be the same under either analysis.

App. Ct. 357, 360 (1974). The police are allowed "to conduct a search that could have been done at the scene of the stop in the safety of the police station." *Commonwealth* v. *Markou*, 391 Mass. 27, 30 (1984). *Markou* and other cases "emphasize the practical good sense of treating a prompt police station search as an extension of the street search which was or could have been made." *Commonwealth* v. *Lara*, 39 Mass. App. Ct. 546, 548 (1995). This is so because, if a search is constitutionally permissible on the street, the occupants of the car suffer no greater intrusion if the search is continued at a police station. *Ibid.* The same concept applies here: the search was valid because it was made pursuant to a valid search warrant, and the search at the police station was a temporary seizure that was merely an extension of the street search. The search was conducted within a reasonable time after the vehicles were towed. We see nothing in the facts here that would require the police to search the vehicles on the spot, with attendant public view and possible interference from curious bystanders. Further, Lugo claims no inconvenience or other detriment resulting from the towing and search at the police station.

*Emery* v. *Holmes*, 824 F.2d 143 (1st Cir. 1987), on which Lugo relies, is inapposite. In *Emery*, a civil case, the court upheld the lower court's ruling that there was a genuine issue of material fact in the summary judgment record as to whether the police officer's seizure and transportation of the plaintiff's car was illegal. *Id.* at 148. The police had a warrant to search the house, and "all . . . vehicles on the property." *Id.* at 146. The car, although parked in front of the premises to be searched, was not owned by the person who owned the premises, and the police did not have a current warrant to search it. Finally, the police did not temporarily seize the car to search it; the police waited six days after towing the vehicle to conduct the search. *Ibid. Emery* does not stand for the proposition that the car should have been searched before it was towed to the police station. Rather, the court ruled that there was a genuine issue concerning the legality of the seizure of the car under the warrant in question. *Id.* at 148.

In the present case, the police were well within their authority to temporarily remove the Ford Aerostar to the police station to search it.

*The cigarette break.* After the presentation of the evidence during a two-day trial, the jury retired to deliberate at 12:30 P.M. They broke for lunch for an hour, between 1:00 P.M. and 2:00 P.M. At 2:30 P.M., the jury submitted three questions to the trial judge, the third being a request for permission to break outside the court house to smoke. The trial judge denied the request, advising the jury that they would break for the day at 3:30 P.M., which they did. In denying the jury's request for a cigarette break, the trial judge explained that it was problematic to suspend deliberations and send court officers to stay with the jurors outside as they smoked. Just prior to breaking for the day, the jury submitted another question.

The jury returned to deliberate at about 9:30 A.M. the next day, with deliberations resuming after the trial judge answered the question posed at the end of the previous day. At about 10:30 A.M., the jury returned their verdict.

Because there was no objection to the trial judge's refusal to allow a cigarette break during deliberations, we examine Lugo's claim to determine whether there was error and, if so, whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Dykens*, 438 Mass. 827, 831 (2003). There was no error.

The trial "judge has discretion to control the conduct of the trial." *Commonwealth* v. *Fleming*, 360 Mass. 404, 409 (1971). Here, the jury asked for a break to smoke at 2:30 P.M., after one-half hour of deliberations following the lunch break. After hearing the answer to one of their questions, the jurors returned to deliberations, and left for the day at 3:30 P.M. The jury returned the next day and continued deliberating. Lugo points to nothing other than the denial of the cigarette break; he does not otherwise show how the denial affected the outcome of the trial. The evidence against him was strong. The jury had questions of the trial judge, including one just before they broke for the first day, which the judge answered prior to deliberations beginning on the second day. Their deliberations lasted a full hour on the second day. Lugo has not shown that the trial judge abused his discretion in denying the request or that the denial resulted in a

compelled or compromised verdict. The denial of the jury's request was well within the discretion of the trial judge. There was no error, much less a substantial risk of a miscarriage of justice.

*Judgments affirmed.*